DALLIE L. RILEY, Appellant, v. INTER-STATE BUSINESS MEN'S ACCIDENT ASSOCIATION, Appellee.

**INSURANCE:** Accident Insurance—Action—Pleading—Sufficiency.
1 It is suggested that, in an action on an accident policy of insurance, the pleading is sufficient if it alleges generally: (a) the existence of the policy; (b) that decedent met his death in a manner covered by the policy; and (c) that all conditions of the policy had been complied with. (Section 3626, Code, 1897.)

**PLEADING:** Construction—Ultimate Fact Allegation Controls Evidentiary Matter—Accident Insurance. A pleading, the proper allegations of which show, on its face, a good cause of action, is not demurrable because exhibits, voluntarily and unnecessarily attached and made a part thereof, *tend*, in an *evidentiary* way, to show that said allegations of the petition proper are untrue. In other words, allegations of proper ultimate facts control *evidentiary* matter unnecessarily attached to and made a part of the petition.

PRINCIPLE APPLIED: The holder of an accident insurance policy died as the result of taking poison. In an action on the policy, the petition alleged:

1. That said poison was accidentally taken.
2. That said poison was not taken voluntarily or involuntarily.
3. That said taking was the result of an accident, as provided in said policy and the articles of incorporation and by-laws.

The pleader also attached, unnecessarily (Section 3626, Code, 1897), as exhibits and as part of the petition, the following: (1) Articles of incorporation and by-laws; (2) a coroner's certificate, and another by a friend, that deceased died from accidental poisoning; (3) proofs of death, containing statements and certificates as to the cause of death, by those present and who attended deceased, and, *inter alia*, reciting that deceased complained of pain in his stomach, went to a doctor, returned, complained of pain in his legs, and expressed wonder as to what the doctor had given him, and soon went into convulsions and died. From these exhibits it appeared that the attending physician certified to his opinion that the "injury itself, independent of all other causes, produced the death," and that the taking of the poison was not voluntary; also, that there were no external signs of injury on the body.

From the articles of incorporation and by-laws, it appeared that

liability attached for death resulting ''from bodily injury effected solely by external, violent and accidental means, and without intervening cause;'' but did not attach (a) for death ''resulting from the voluntary or involuntary taking of poison,'' or (b) if the occasion of the accident be bodily infirmity, or (c) if the occasion of the accident be medical treatment.

Defendant demurred, because the petition showed on its face: (a) that death was not caused by accidental means; (b) that death was caused by a voluntary or involuntary taking of poison; (c) that death was caused by an accident resulting from bodily infirmity; and (d) that death was caused by an accident resulting from medical treatment. *Held* that the admission by the demurrer of the truth of the *ultimate allegations of fact* of the petition was not overcome by the evidentiary matters appearing in the exhibits; that such admission rendered said *evidentiary* matters inoperative.

INSURANCE:     Accident  Insurance—Exemptions—''Voluntary  or
3  Involuntary Taking of Poison.''   An exemption, in an accident policy of insurance, of liability for death ''resulting from the *voluntary or involuntary* taking of poison,'' manifestly contemplates liability for *some* deaths occasioned by poison; but whether an *accidental* taking of poison is a ''voluntary or involuntary taking of poison,'' within the meaning of the above exemption clause, *quaere.*

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

SATURDAY, SEPTEMBER .23, 1916.

DEMURRER to plaintiff's petition sustained.  She appeals. —*Reversed.*

*Tourtellot & Donnelly,* and *Edwards, Longley, Ransier & Smith,* for appellant.

*Dunshee & Haines,* for appellee.

SALINGER, J.—I.   Section 3626 of the Code of 1897 provides that, in pleading the performance of conditions precedent in a contract, it is not necessary to state the facts constituting such performance, but the party may state generally that he duly performed all the conditions on his part.   It seems to be contemplated that under this statute the

1. INSURANCE: accident insurance: action: pleading: sufficiency.

answer of the defendant is to set out its articles of incorporation. *Krause v. Modern Woodmen,* 133 Iowa 199, at 203. In *Clark v. Riddle,* 101 Iowa 270, there is involved an injunction to restrain illegal sale of intoxicating liquors. It is conceded, of course, that the sale of liquor of itself proves an illegal sale, and that, therefore, it is upon the defendant to set up the bar of what is known as the mulct law. It is said that a general allegation that whatsoever business was carried on in the premises described in the petition was carried on under and by virtue of the provisions and privileges of that law (citing the statute), is probably sufficient, because said section of the statute authorizes the performance of conditions precedent to be stated generally. In *Brock v. Des Moines Insurance Company,* 96 Iowa 39, this statute was applied to pleading that proof of loss required had been made. In the same case, it was held that the statute can be waived, and that, where the facts constituting proof of loss are stated, a general denial puts the making of the proof in issue, and there will be a failure of proof if the facts stated do not constitute a sufficient proof of loss.

It would seem, therefore, that plaintiff was under no requirement to plead more than that her decedent had a described certificate, generally; that he had met his death in a manner covered by the certificate; and that all conditions thereof had been complied with. But plaintiff chose to do more. While, therefore, the statute does not aid her, and she must take the consequences of her volunteer pleading, that consequence is, on demurrer, no more than that the volunteer matter is an admission. If what is thus admitted avoids a recovery, demurrer will defeat her. It follows that the demurrer is not good merely because the case stated is not enough to recover on, but can be effective only if that be affirmatively admitted which defeats the action. The sole question we have on this record is whether there are such affirmative admissions.

## 2.

A copy of the application is attached to the petition as Exhibit "A," and made part thereof; and a copy of the certificate of membership issued on the application and a synopsis of the articles of incorporation and by-laws are attached as Exhibit "C."

2. PLEADING: construction: ultimate fact allegation controls evidentiary matter: accident insurance.

One provision of Exhibit "C" is that the defendant will pay for a death which results within six months after injury, and which results "from bodily injuries effected solely by external, violent and accidental means, and without intervening cause." Another provision is that there is to be no liability for death "resulting from the voluntary or involuntary taking of poison;" another, that there is no liability if the occasion of the accident be bodily infirmity; still another, that there shall be no liability if the occasion of the accident be medical or surgical treatment.

In addition to the matters set out by way of exhibits to the petition, the petition itself avers:

"That said poison was accidentally taken, was neither voluntarily or involuntarily taken by him, but was the result of an accident, as provided for in said certificate and the articles of incorporation and by-laws aforesaid."

## 3.

The demurrer, which was sustained, asserts that the petition shows on its face that the death was not caused by accidental means; was caused by a voluntary or involuntary taking of poison, or by an accident resulting from bodily infirmity, or by an accident resulting from medical treatment. It asserts that the petition shows that the death was caused by taking of poison, to wit, a drug administered by the physician of decedent, and taken voluntarily or involuntarily, and that, therefore, the death was not produced by accidental means; asserts that the petition shows that, for

some time before his death, deceased was suffering from disease or bodily infirmity, and for that reason sought medical aid and took the drug; wherefore, it shows on its face that the accident was occasioned by disease or bodily infirmity; asserts that it shows on its face that death was produced by a drug given after consultation with reference to a sickness or bodily infirmity, and when seeking medical treatment; wherefore, it shows on its face that the accident was caused by medical treatment. Does the petition show this, on its face?

II.    The words that single out the voluntary or involuntary taking of poison were put into the contract by the defendant, and it must be assumed that they were intended to be effective, and to state the exemptions of defendant to the uttermost extent intended. Therefore, they cannot mean that the naked fact of death by poison absolves from liability. It must have been intended that there could be some deaths from poison for which defendant is liable. Had it been the intention that the mere fact that the death was due to poison defeated recovery, a statement that the defendant was not liable if death so resulted would have been plenary, and would have covered any death from poison, no matter how caused. If that was the intent, it is peculiar that it should be effectuated by a provision that there should be an exemption if the poison was taken voluntarily or involuntarily, which was merely the stating of part where all was intended. It follows that an admission which admits no more than that death may have been caused by strychnine, is not an affirmative admission that the poison was taken either voluntarily or involuntarily. This follows because, as said, the very language of the contract recognizes that there may be poisoning from poison which was taken neither voluntarily nor involuntarily.

3. INSURANCE: accident insurance: exemptions: "voluntary or involuntary taking of poison."

If there be admissions that the death resulted from bodily infirmity, or medical treatment, and that it did not result

from external, violent and accidental means, without intervening cause, it must be found in the statement of the brakeman, an exhibit to petition, which is to this effect: Just before decedent went to the doctor, he complained of a pain in his stomach; a few minutes after returning from the doctor, decedent complained his legs were weak; he went into the coach and sat down; as he started out of the depot and reached a window, he took hold of its ledge; thereafter, the brakeman and another took him by the arm and assisted him; decedent and the brakeman left on their train shortly after this, and Riley then complained of his legs' hurting him, and wondered what the doctor had given him; when they got him on his feet, he started to have convulsions and became unconscious—died in about an hour after he had seen the doctor. The further admission is that, in the opinion of Dr. Russ, the "injury itself, independent of all other causes, produced the death;" and a statement that there were no marks upon the body or other external signs of injury; and a statement that there was such love of life and of family and such good health as to indicate that no poison was taken voluntarily. The admissions consist mostly of statements by persons who were not present when the decedent and Dr. Wand were together, to the effect that what they saw later indicates that decedent had been poisoned by strychnine. This is a fair statement of this much, because nothing appears concerning what decedent actually did in the drug store.

There are other things set out in the exhibits which require our consideration, perhaps as much as those parts of the exhibit upon which defendant lays stress. There is a statement in the certificate of a neighbor and friend that the cause of death was accidental poisoning, and a coroner's certificate that, on legal inquest, it was found that deceased came to his death by accidental poisoning. The proof of loss, as much an exhibit as is the statement of the brakeman, says that the accident happened from poison accidentally taken. Bearing in mind, again, that there may be poisoning other

than by voluntary or involuntary taking of poison, it is no
strain, in view of the rules prevailing in construing a contract
framed by the defendant, that accidental poisoning is not the
voluntary or involuntary taking of poison.

In addition to the matters set out by way of exhibits to
petition, that pleading itself avers:

"That said poison was accidentally taken, was. neither
voluntarily or involuntarily taken by him, but was the result
of an accident, as provided for in said certificates and the
articles of incorporation and by-laws aforesaid."

We think the utmost that can be claimed from the mat-
ters set out by way of exhibit is that they have evidentiary
force to sustain the ultimate proposition that death resulted
from poison taken either voluntary or involuntarily, or from
bodily infirmity, or from medical treatment, and did not
occur from bodily injuries effected solely by external, violent
and accidental means, and without intervening cause. We
have at the threshold, then, the question whether, if admis-
sions made evidence of these things, they are not on demurrer
controlled by an allegation of the petition that the death
resulted from something other than what this evidence tends
to show, and something which is covered by the contract of
insurance. It is manifest that if, on the trial, the plaintiff
made admissions which were evidence tending to defeat the
suit, and defendant made a general admission that it was
liable, the last would control the first. The first inquiry,
then, is whether the demurrer did not, by admitting so much
of the exhibits as assert accidental poisoning, and admitting
the allegation that the poison was accidentally taken, was
neither voluntarily or involuntarily taken, but was the result
of an accident provided for in the certificate, articles of incor-
poration and by-laws of defendant, admit away all that is
admitted by exhibits attached to the petition. Which is to
control,—the admission of said parts of the exhibits and of
the general allegation, or the setting out what may be deduced
from other parts of the exhibits? This necessitates consid-

eration of whether this general allegation in petition is well pleaded; for nothing else is admitted by demurrer. Our system of pleading is a fact system, and requires the parties to state truly and frankly the facts upon which they rely for their action or defense. It does not allow, on the one hand, the statement of legal conclusions, nor, on the other hand, the statement of evidence of facts. The pleading should state ultimate facts, and not the evidence of such facts. *Lumbert v. Palmer,* 29 Iowa 104; *Pfiffner v. Krapfel,* 28 Iowa 27; *Robinson v. Berkey,* 100 Iowa 136. This makes the rule on what demurrer admits somewhat difficult of application. The demurrer will not admit a pure conclusion, and the pleader may not plead his evidence. All that the demurrer can ever admit, then, is something which states ultimate facts, as distinguished either from legal conclusions or a setting out of the evidence to prove them. It follows that facts may be well pleaded within that rule, though what is pleaded has some of the aspects of a conclusion intermingled with evidentiary allegations. We held, in *Robinson v. Berkey,* 100 Iowa, at 143, as to an allegation that "defendants say that, with proper management, the said machine would not and could not and did not do as much work or as good work as other machines of similar size, for the same purpose," and which it was moved to strike, that, being in addition to facts upon which it was founded, the pleading satisfied the rule requiring a statement of facts; that, while legal conclusions are not to be pleaded, "and, likely, conclusions of fact may not be so stated as to be sufficiently plain," the test of the pleading is not whether it is so worded as to be unobjectionable, were it a question to a witness.

We are of opinion that, if this general statement had stood alone, the petition would not have been vulnerable to demurrer, and demurrer would have admitted what is thus pleaded. It follows that admitting this admits the ultimate liability and right to recover, and makes inoperative on demurrer the evidentiary matter set out in the exhibits to

petition. We add that the demurrer admitted the statement in exhibits that the death was due to accidental poisoning. We should not now decide, and do not, whether accidental poisoning is or is not the voluntary or involuntary taking of poison within the meaning of the provisions of this certificate. We hold that the petition does not show affirmatively any of the defeasances upon which appellee relies. We are of opinion that there should be a trial on the petition, and that defendant may thereon show, if it can, that the death resulted from conditions which defeat recovery under the contract.—*Reversed*.

EVANS, C. J., LADD and GAYNOR, JJ., concur.