JOHNSON ET AL., APPELLANTS, v. JOHNSON, COUNTY TREASURER, ET AL., RESPONDENTS.

(No. 6,940.)

(Submitted September 21, 1932. Decided November 5, 1932.)

[15 Pac. (2d) 842.]

514

*Mr. R. E. McHugh* and *Mr. E. G. Toomey,* for Appellants, submitted a brief; *Mr. Toomey* argued the cause orally.

*Mr. L. A. Foot,* Attorney-General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Respondents, submitted a brief; *Mr. Davidson* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiffs, Alfred and Victor Johnson, have appealed from a judgment of dismissal entered in an action instituted by them against the assessor, the treasurer, and the board of county commissioners of Granite county, and the State Board of Equalization, to recover the amount, paid under protest, as taxes on certain lands for the year 1930. The judgment was entered after defendants' general demurrer to the complaint had been sustained and plaintiffs had declined to further plead; it recites that all proceedings in eleven like cases are stayed awaiting the disposition of this appeal.

The only question presented herein is as to the sufficiency of the complaint to withstand the assault of a general demurrer.

In support of the judgment, counsel for the defendants contend that many of the allegations of the complaint contain

either pure conclusions of law, opinions of the pleader, conclusions of fact, or mere inferences, the truth of which is not admitted by the demurrer (49 C. J. 440), and with these disregarded and only those properly pleaded taken into consideration, the complaint does not state sufficient facts to constitute a cause of action. This position requires a too narrow view of the complaint under the rules of practice and pleading in this jurisdiction.

While a bare legal conclusion does not aid the pleader, as ▉▉▉ it is ineffective for any purpose as a pleading (*Ridpath* v. *Heller*, 46 Mont. 586, 129 Pac. 1054; *Lunke* v. *Egeland*, 46 Mont. 403, 128 Pac. 610), and is therefore insufficient to withstand a general demurrer (*Bordeaux* v. *Greene*, 22 Mont. 254, 74 Am. St. Rep. 600, 56 Pac. 218), the allegations of a complaint must be liberally construed with a view to substantial justice between the parties. (Sec. 9164, Rev. Codes 1921.) Under the legislative mandate, a complaint attacked by general demurrer will be held sufficient, although defective in many particulars, if it alleges directly, or by necessary inference, facts showing the plaintiff's primary right and its infringement by the defendant (*McLean* v. *Dickson*, 58 Mont. 203, 190 Pac. 924; *Piatt & Health Co.* v. *Wilmer*, 87 Mont. 382, 288 Pac. 1021), and is sufficiently certain to enable the opponent to prepare his evidence to meet the alleged facts. (*Kozasa* v. *Northern Pac. Ry. Co.*, 61 Mont. 233, 201 Pac. 682.)

Whatever is necessarily implied in, or is reasonably to be ▉▉▉ inferred from, an allegation is to be taken as directly averred. (*Gauss* v. *Trump*, 48 Mont. 92, 135 Pac. 910; *Cramer* v. *Deschler Broom Factory*, 79 Mont. 220, 255 Pac. 346; *Rhule* v. *Thrasher*, 88 Mont. 468, 295 Pac. 266; *Johnson* v. *Herring*, 89 Mont. 156, 295 Pac. 1100.) Matters of form and redundant matter will be disregarded, and if upon any view the plaintiff is entitled to any relief, the sufficiency of the pleading will be sustained. (*Donovan* v. *McDevitt*, 36 Mont. 61, 92 Pac. 49; *Biering* v. *Ringling*, 78 Mont. 145, 252 Pac. 872; *Wells-Dickey Co.* v. *Embody*, 82 Mont. 150, 266 Pac. 869.)

Good pleading neither requires nor permits the pleading of ██ the evidence upon which the pleader relies to maintain his action. (*Outing Kumfy-Kab Co.* v. *Ivey,* 74 Ind. App. 286, 126 N. E. 234; *Hyman* v. *Langston,* 210 Ala. 509, 98 South. 564.) This rule is recognized and applied in *First State Bank* v. *Mussigbrod,* 83 Mont. 68, 271 Pac. 695.

The ultimate facts only should be set out; ultimate facts ██ "are nothing more than issuable, constitutive, or trav-. ersable facts essential to the statement of the cause of action." (*Musser* v. *Musser,* 281 Mo. 649, 221 S. W. 46, 50.) The test as to whether the pleader has stated ultimate facts or conclusions of law is: Does the complaint state facts from which the court can determine that he is entitled to relief, or merely declare that the pleader is entitled to the relief demanded? (*State ex rel. Stephens* v. *Zuck,* 67 Mont. 324, 215 Pac. 806.) But difficulty arises from the fact that the line of demarcation between ultimate facts and conclusions of law is not clear. (*Riley* v. *Inter-State Assn.,* 177 Iowa, 449, 159 N. W. 203.) "A pleader may allege ultimate facts from which a legal conclusion identical with such facts would necessarily follow." (49 C. J. 46, note a.)

The sufficiency of the complaint before us must be determined by the application of the foregoing rules.

The complaint and the assignments of error raise certain constitutional questions, disposition of which will be made in the general discussion of the law applicable to such a case as this.

It should be first noted that this action and the eleven like actions mentioned in the judgment are the outcome of the hearing and decision of the State Board of Equalization considered in *State ex rel. Schoonover* v. *Stewart,* 89 Mont. 257, 297 Pac. 476. By the order therein mentioned and set out in the complaint before us, the board reduced the assessment on all irrigated lands involved in appeals to it, and denied relief as to the "grazing lands" which are the subject matter of this action and those others to which reference is made.

Reference may be had to the Schoonover opinion as to the steps taken by these plaintiffs prior to paying the challenged tax under protest; it is sufficient here to say that, by proper averments, the complaint discloses that the plaintiffs regularly pursued and exhausted their statutory remedy, without avail, and thereafter, on demand of the county treasurer "and not otherwise," paid the demanded tax under protest. The notice of protest, stating the grounds of protest, is set out in the complaint.

On appeal from the decision of the county authorities, the State Board of Equalization acts in a *quasi*-judicial capacity, and, as the law does not provide for an appeal from its decision, its order is final and conclusive. (*State ex rel. Schoonover* v. *Stewart*, above.) This declaration, how- ever, presupposes regularity of action and the application of honest judgment on the part of the board. The courts will, in certain instances, protect a taxpayer by means of the writ of certiorari or injunction, when he has exhausted the remedy afforded by appeal to the taxing authorities. (*Belknap Realty Co.* v. *Simineo*, 67 Mont. 359, 215 Pac. 659; *State ex rel. Souders* v. *District Court*, ante, p. 272, 12 Pac. (2d) 852.) In such a proceeding the court will not substitute its judg- ment for that of the taxing officials and, consequently, a mere overvaluation, honestly made, will not be disturbed; relief will only be granted on proof that the taxing officers have pursued a wrong method of assessment or have acted fraudulently or maliciously, or where error or mistake "so gross as to be inconsistent with any exercise of honest judgment" is shown. (*State* v. *State Board of Equalization*, 56 Mont. 413, 185 Pac. 708; *Danforth* v. *Livingston*, 23 Mont. 558, 59 Pac. 916, 917; *State ex rel. Schoonover* v. *Stewart*, above.)

In this jurisdiction, however, an aggrieved taxpayer need not invoke the extraordinary powers of the court, as provision is made for the payment of taxes, "deemed unlaw- ful," under protest and the institution, within sixty days thereafter, of a direct action for their recovery. (Sec. 2269, Rev. Codes 1921, as amended by Laws 1925, Chap. 142.) This

method of determining whether or not a demanded tax is "unlawful" is declared to be exclusive, unless the tax falls within the exceptions noted in section 2268, Id. (*First Nat. Bank* v. *Sanders County*, 85 Mont. 450, 279 Pac. 247; *First Nat. Bank* v. *Beaverhead County*, 88 Mont. 577, 294 Pac. 956.)

Section 2268 withdraws the power of the courts to restrain the collection of any tax or the sale of property for delinquency, except where the tax is "illegal" or the property exempt from taxation.

Reading the two sections together, it is clear that the legislature did not use the term "unlawful," found in section 2269 as amended, for the purpose of confining the action there provided for to one attacking a tax on the ground that it was illegally laid, but intended thereby to permit an action for the recovery of any tax or any part thereof which could not lawfully be exacted.

In the case at bar the property of the plaintiffs was assessable for its full cash value and only the excess, if any, is █ "unlawful"; while the plaintiffs pray for judgment for the full amount of the tax paid under protest, if they prevail, the just tax on their property should, if possible, be upheld and only that shown to have been "unlawfully" collected should be returned to them.

Speaking of a similar action instituted under a like statute, █ the district court of appeals for the first district of California has said: "The assessment not being wholly void, this action, though cast in the form of an action to recover a tax paid under protest, is properly a proceeding to review the decision of the board of equalization. The function of the trial court, therefore, was to determine whether a correct method of valuing * * * was pursued, and whether there was substantial evidence before the board in justification of the assessment made." (*Hammond Lumber Co.* v. *Los Angeles County*, 104 Cal. App. 235, 285 Pac. 896, 899.)

This is the logical interpretation of the statute; given the right to institute such an action, the aggrieved taxpayer is

entitled to his day in court where he may show just what was before the board or what it might legally consider as affecting the assessment challenged, provided his complaint alleges facts which, if established, would entitle him to any part of the relief sought. In other words, such an action challenges the sufficiency of the evidence to warrant the order of the board and, in determining the question thus presented, the court does not substitute its judgment for that of the taxing authorities, but merely determines, as a matter of law, whether or not the evidence presented to the board is sufficient to sustain the order made. In doing so the court is bound by the rules above announced. Mere overvaluation of the property, if shown, is not enough to overthrow the order of the board. As stated in *Danforth* v. *Livingston,* above: "The value of property is a matter of opinion. \* \* \* Absolute accuracy cannot always be attained. Courts cannot be called upon, in every instance, to settle differences of opinion in this regard between the assessing officer and the property owner. Otherwise courts would be converted into assessing boards and \* \* \* would usurp the powers lodged elsewhere."

However, a hearing on objections to the assessment of ▉ property is necessary in order to constitute due process of law. (3 Cooley on Taxation, 3d ed., secs. 1113, 1114; *Hagar* v. *Reclamation District,* 111 U. S. 701, 28 L. Ed. 569, 4 Sup. Ct. Rep. 663.) And while the hearing may be informal, the taxpayer must be given an opportunity to produce proof of, and argue, his position, however briefly, and the board must render its honest judgment based upon evidence before it. Where a hearing is a mere form, there is no due process. (3 Cooley, above, sec. 1116; *Londoner* v. *City and County of Denver,* 210 U. S. 373, 52 L. Ed. 1103, 28 Sup. Ct. Rep. ▉ 708.) A presumption of correct action will give prima facie support to the board's conclusions, but this presumption is not conclusive in any case. (3 Cooley, above, sec. 1229.)

As a court cannot arbitrarily disregard credible, uncontra- ▉ dicted evidence and render a valid judgment contrary

thereto (*Sylvain* v. *Page,* 84 Mont. 424, 63 A. L. R. 528, 276 Pac. 16, 18; *Piersky* v. *Hocking,* 88 Mont. 358, 292 Pac. 725), a board, sitting in a *quasi*-judicial capacity, is bound by such evidence. (3 Cooley, above, sec. 1224; *State ex rel. Heller* v. *Lawler,* 103 Wis. 460, 79 N. W. 777; *Souther* v. *South Orange,* 46 N. J. L. 317.)

If the complaint under consideration alleges, either directly or by necessary inference, facts bringing plaintiffs' case within the foregoing rules, the court erred in sustaining the demurrer to the complaint.

Viewing the complaint in the light most favorable to the pleader, as we must, it alleges that the plaintiffs are the owners of eleven tracts of land in Granite county, aggregating more than 4,000 acres, all of which is arid, mountainous, precipitous, barren of vegetation and "hazardous to livestock," and not in the true sense "grazing land"; that this land was returned to the assessor for taxation at its full cash value and all of the facts concerning its character were made known to the assessor. It is then alleged that the assessor refused to take the facts known to him into consideration; made no attempt to establish the "full cash value" of the land and arbitrarily "lumped" all of the lands as "grazing lands," as severally classified, instead of classifying them according to their value; that the values fixed by the assessor were double the full cash value of the lands as returned. Further it is alleged that the valuations assigned to these lands were "wholly disproportionate" to those on like lands in all contiguous counties and to the value placed on other classes of property within the county and such action compels these lands to carry more than their just proportion of the burden of government. It is alleged that all of these facts were made known to the county board of equalization and no evidence to the contrary was produced, yet that board arbitrarily denied plaintiffs' application for a reduction without considering the evidence before it.

Finally it is alleged, in like manner, that on the hearing before the state board all of the facts laid before the assessor

and the county board, showing the condition, character, and value of the lands, and what was done by each, were presented to the state board; that this evidence "logically and equitably compelled the conclusions sought by plaintiffs" and no evidence whatever in contradiction thereto was introduced, and that the board arbitrarily and capriciously disregarded all of the evidence before it.

The recitals contained in the board's order bear out the statement that the plaintiffs alone produced evidence before the board, in that it there appears that witnesses were sworn and testified "as to the character and value of the lands," and that the chairman of the board of county commissioners "made a statement as to the position taken by the board." It is apparent that the only witnesses testifying were called by the plaintiffs and that the "statement" made was not in the nature of evidence.

It is contended that, as the complaint shows that plaintiffs' lands were placed in five classes, under valuations of "$3.00; $4.00, $5.00, $7.00, $10.00," the complaint negatives the allegation that they were "lumped" as grazing lands without regard to their full cash value. The allegation of the complaint in this regard is, in effect, that the assessor did not follow the mandate of the statute, in that he gave no consideration to the actual cash value of the lands, of which he was fully aware; instead, he assessed them as "grazing lands" to which, under his method of assessment, were assigned arbitrary and uniform values without regard to the "full cash value" of the lands assessed.

Under the allegations of the complaint the several valuations given merely indicate that the assessing authorities recognized the fact that grazing lands differ in character and value, and, consequently, subdivided the classification into five classes. Mere classification within a classification does not meet the requirement of the law in this connection; the purpose of the Classification Act is to place all lands of the same general character in the same class, not

to place the same value on all lands in the same class. (*State ex rel. Schoonover* v. *Stewart, above*.)

The allegation that the evidence before the state board was such as to compel favorable action is, of course, a bald legal conclusion, not to be considered; but those to the effect that all of the facts theretofore alleged were made known to the board, that there was no evidence before the board contradictory of that of the plaintiffs, and that the board disregarded all of the evidence before it and acted arbitrarily, are allegations of ultimate facts.

The complaint alleges that a wrong method of assessment was adopted and that the lands in question were grossly overvalued, which errors of the assessor were perpetuated by the county board and the state board, neither of which boards received or had before it any evidence other than that furnished by the plaintiffs to the assessor and reproduced before the state board.

The evidence produced before the state board is not before us, and, therefore, we cannot say whether, in fact, a wrong method of assessment was employed or whether or not the overvaluation placed upon the lands was so gross an error as to be inconsistent with any exercise of honest judgment; but the allegations of the complaint are sufficient to invoke the aid of the trial court in this regard, and it will be for the court to determine those questions when the case is finally presented to it.

While the allegations of the complaint may not make as strong a case as the showing made in the California cases announcing the right of the courts to review the action of the taxing authorities (*Los Angeles Gas Co.* v. *Los Angeles County*, 162 Cal. 164, 9 A. L. R. 1277, 121 Pac. 384; *Southern Pacific Land Co.* v. *San Diego County*, 183 Cal. 543, 191 Pac. 931; *Mahoney* v. *San Diego*, 198 Cal. 388, 245 Pac. 189), the principle is the same.

The complaint sufficiently states the facts upon which plaintiffs would be entitled to relief to withstand the attack of

524

a general demurrer, and amply advises the defendants as to what they will have to meet on a trial of the action.

The judgment is reversed and the cause remanded, with direction to the trial court to overrule the demurrer to the complaint.

MR. CHIEF JUSTICE CALLAWAY, MR. JUSTICE ANGSTMAN, HONORABLE JEREMIAH J. LYNCH and HONORABLE JOHN HURLY, District Judges, sitting respectively in place of JUSTICES GALEN and FORD, disqualified, concur.